ERIC THOMAS WRHEL,

                        Plaintiff,                              OPINION and ORDER

   v.
                                                                16-cv-758-jdp
UNITED STATES OF AMERICA,

                        Defendant.

Eric Thomas Wrhel, a Madison resident appearing pro se, alleges that the Internal Revenue Service violated its rules by mailing notices about his unpaid taxes to the wrong address, collecting those taxes without proper notice, and harassing him during their tax-collection efforts. He brings claims under 26 U.S.C. § 7422 ("Civil actions for refund") and § 7433 ("Civil damages for certain unauthorized collection actions"). Defendant United States has filed a motion for summary judgment, and both parties have filed a host of other motions that I will address below.

After considering the parties' summary judgment materials, I conclude that the United States should be granted summary judgment on Wrhel's claim for refund under § 7422 because the IRS has already refunded Wrhel the amount that it had incorrectly collected. The IRS indeed violated its own rules by sending notices to the wrong address and then incorrectly collecting unpaid taxes, but I conclude that Wrhel fails to show that he is entitled to any pecuniary damages under § 7433. However, under that statute he is entitled to reimbursement of the filling fee for this action.

PRELIMINARY MATTERS

Before addressing defendant's motion for summary judgment, I will address several preliminary matters.

**A. Scope of the case**

Previously, in ruling on defendant's motion to dismiss the case, I explained that Wrhel's claims were limited to those under 26 U.S.C. § 7422 ("Civil actions for refund") and § 7433 ("Civil damages for certain unauthorized collection actions"). *See* Dkt. 32. Wrhel has filed a motion to "expand" his complaint to add a claim that IRS employees violated 26 U.S.C. § 6331 ("Levy and distraint"), by levying his state tax return without sending notice to his true last known address; instead it was sent to his previous Iowa address. Dkt. 54. I will grant this motion because it clarifies Wrhel's § 7433 claims by explaining a rule he believes that IRS officials broke. But I will not consider the § 6331 violation as a claim separate from his § 7433 claim.

Wrhel followed with a motion to add new claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1974). Dkt. 111. Defendant has filed a motion to strike the new claims. Dkt. 117. As I have explained to Wrhel in one of his previous cases, Congress has limited the types of claims that a taxpayer can bring against the IRS. *See Wrhel v. U.S. Treasury-Internal Revenue Serv.*, No. 15-cv-39-jdp, 2016 WL 1122103, at *4 (W.D. Wis. Mar. 22, 2016) (citing *Cameron v. I.R.S.*, 773 F.2d 126, 129 (7th Cir. 1985) (taxpayers may not bypass the remedies provided by Congress by bringing a *Bivens* action for damages against Treasury employees). So he may not bring *Bivens* claims regarding tax issues. I will deny his motion to add *Bivens* claims and I will grant defendant's motion to strike the new claims.

## B. Motion to remove attorney

Wrhel has filed a motion asking the court to sanction Christopher Moran, one of the attorneys for the United States, because discovery responses he submitted appear to contradict one of defendant's affirmative defenses. Defendant asserted that Wrhel was responsible for the mis-delivered mail here because he placed an incorrect old address on some of his tax returns. Dkt. 34, at 10. But the government concedes in discovery responses that Wrhel actually placed his correct current address on his 2010 return, the most recent return at the heart of the incorrect-address issue. Dkt. 55-2, at 1. Wrhel asks that I remove Moran from the case and that Moran be fired and disbarred.

I will deny this motion. I do not have the power to terminate or disbar attorneys. And although it should have been apparent to the government that its affirmative defense was not supported by the facts, not every mistake by an attorney warrants a sanction. Wrhel has not been prejudiced by the defense's inclusion of this affirmative defense, and defendant does not raise the issue at summary judgment. I also note that the request for removal has been mooted: Moran has withdrawn from the case because he is leaving his position at the United States Department of Justice.

## C. Motion for injunction

Wrhel has filed a motion for preliminary injunctive relief suspending the IRS's state income-tax levy program. Dkt. 85. I will deny this motion. The Anti-Injunction Act provides, with limited exceptions that do not apply here, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). So I

cannot grant the injunctive relief that Wrhel seeks, even if I thought that it were warranted, which I do not.

## D. Discovery disputes

The parties have several disputes over discovery. I have sorted them into four categories.

First, Wrhel has filed a motion that I construe to be one for a protective order concerning requests for admissions about his 2001 and 2002 tax returns and questions aimed at understanding precisely what IRS regulations Wrhel believes that IRS agents violated. Dkt. 42. Defendant states that the old tax returns might be relevant because they contained his old address, but the case ultimately concerns the IRS's failure to update Wrhel's address to match documents that postdate the documents that defendant seeks. So the 2001 and 2002 returns do not appear to have any relevance to the case. I will grant Wrhel's motion regarding this information. As for the questions about what regulations Wrhel believes the IRS violated, his later filings—including his motion to "expand" his complaint discussed above— address that question. I will consider that issue moot.

Second, Wrhel filed motions to subpoena the IRS, Wells Fargo Bank, several family members, and himself, to obtain evidence showing that financial transactions undertaken after the 2011 death of his father resulted in additional disclosures of Wrhel's Madison address to the IRS. Dkt. 50 and Dkt. 53. For each request, he has filled out a subpoena form for the production of documents. But as defendant points out in objecting to the requests, Wrhel really appears to be trying to take depositions of each party by written question under Federal Rule of Civil Procedure 31: he does not explain what documents he seeks, but rather he includes a list of questions he intends to ask each party.

Defendant contends that Wrhel has not complied with the requirements of Rule 31, such as not going through the process of exchanging questions with defendant or identifying the officer who would be overseeing the depositions. These are minor defects that I might ordinarily allow Wrhel to fix, but I will ultimately deny his motions because the information he seeks is not material. As the discussion below will show, the IRS concedes that it had Wrhel's proper Madison address before the events Wrhel discusses in his subpoena requests. So the question of the IRS's negligence is already being determined in Wrhel's favor. Wrhel has also failed to show any plausible connection between the IRS's alleged misdeeds regarding his taxes and the events concerning his father's estate. Defendant filed a motion for protective order from Wrhel's subpoenas. Dkt. 59. But because I am denying Wrhel's motions for subpoenas, I will deny the motion for protective order as moot.

Third, defendant has filed a motion to compel Wrhel to sign a form authorizing the release of his medical records or alternatively to compel production of those documents. Dkt. 60. The parties dispute the precise scope of Wrhel's mental health records that are relevant given his claims for pecuniary damages related to his mental health problems. After summary judgment briefing was completed, Wrhel submitted three compact discs to the court containing medical records. Dkt. 102; Dkt. 106; Dkt. 107. The clerk of court allowed defendant's counsel to view the discs at the court, following which defendant filed a motion for a hearing to discuss authorization for the release or copying of these records. Dkt. 119. The parties continue to dispute whether these records were all the records relevant to Wrhel's claims.

I have reviewed the discs and I discuss them briefly in the opinion below. The medical records are ultimately immaterial because Wrhel's claims do not hinge on the details of the actual emotional harm he has suffered. Rather, he fails to show that serious mental harm is a

reasonable consequence of the IRS's violations of its rules, so he cannot recover any damages related to emotional harm. Because I need not rely on the contents of the medical records to rule on defendant's summary judgment motion, I will deny defendant's discovery motions about these materials as moot.

Fourth, after Wrhel served second and third sets of interrogatories on defendant, which go beyond the 25 total allowed under Federal Rule of Civil Procedure 33, defendant filed a motion to prohibit Wrhel from issuing further discovery requests without leave of the court. Dkt. 61. Wrhel responded with a motion to compel responses to the additional interrogatories, most of which have to do with additional questions that Wrhel has about the computer database containing his incorrect address. Dkt. 71. But as discussed below, the government has already conceded that the automated database mistakenly did not update his address, and there is not a plausible reason to think that an IRS employee intentionally manipulated the database to ensure that Wrhel's notices were sent to the wrong address. There is no reason for me to allow Wrhel to go past his 25 allotted interrogatories, so I will deny his motion to compel. In light of this order disposing of the case, I will deny defendant's motion to restrict further discovery as moot.

UNDISPUTED FACTS

## A. 2010 refund

This case concerns Wrhel's taxes for 2010 through 2013. His claim for a refund is about assessments he paid for his 2010 taxes.

In February 2011, Wrhel filed his 2010 federal income tax return claiming a refund, which the IRS issued. Wrhel's 2010 federal income tax return stated that he resided at 2348 Superior St., Madison, WI 53704.

In December 2011, the IRS issued an inquiry form stating that information it had received from third-party filers did not match Wrhel's tax return: the Ho-Chunk Nation reported that Wrhel had earned $1,146 that year. Later records show that this income represented winnings in three poker tournaments. But the IRS did not send this notice to Wrhel's address in Madison. Instead the notice was sent to a previous address of Wrhel's in Burlington, Iowa. Wrhel did not receive this notice.

On January 23, 2012, the IRS issued Wrhel a notice of deficiency for taxes not paid on the poker winnings. But it again sent the notice to the Iowa address. On June 4, 2012, a delegate of the secretary of the Treasury assessed Wrhel with $287 of tax and $11.34 in interest for tax year 2010. The IRS sent collection notices to the incorrect Iowa address five times between June and October 2012. The IRS later sent collection notices to Wrhel's correct Madison address in October and December 2014, with additional interest and penalties added.

In November 2014, the IRS levied $94.41 from Wrhel's state income tax refund. In December 2014, Wrhel made a payment of $393.35. In January 2015, the IRS issued Wrhel a refund of $166.46 because Wrhel's payments resulted in an overpayment of the assessed 2010 tax liabilities and because the IRS had abated penalties.

On June 15, 2015, Wrhel initiated a suit in the United States Tax Court contesting the notice of deficiency regarding Wrhel's 2010 tax year. On January 7, 2016, the Tax Court concluded that the January 23, 2012 notice of deficiency was invalid because the IRS sent it to Wrhel's Iowa address, not the Madison, Wisconsin address that Wrhel listed on his 2010 federal income tax return.

In May 2016, the IRS abated the $287 tax assessment, and the associated interest for Wrhel's 2010 tax year. The IRS issued Wrhel a refund check for $335.59. Wrhel did not cash the check. He says, "This refund check itself contained no communication with regard to further resolution in regard to the tax court ruling docket #15387-15. Wrhel therefore refused to accept the check pending resolution to this lawsuit." Dkt. 94, at 3. He says, "This was done as result of the United States failure to effectively resolve these matters with me." *Id.* at 7. Because Wrhel did not cash the check, the funds were redeposited by the IRS.

**B. 2011–2013 returns**

Wrhel did not file timely federal income tax returns for the 2011, 2012, and 2013 tax years. By July 2014, IRS Revenue Officer Brian Rudser was assigned to inquire about Wrhel's tax returns for those years.[1]

In July 2014, Rudser sent two letters to Wrhel inquiring about Wrhel's late tax returns. Wrhel says that he retained accountant Anthony Vallon to handle his tax issues. On about July 31, 2014, Wrhel responded to Rudser's letters, stating that the delinquent returns were being prepared by his accountant, and that the returns would be filed by October 15, 2014. The

---

[1] The parties dispute Wrhel's income for those years, but that dispute is irrelevant: it is undisputed that Wrhel failed to file timely tax returns for those years.

letter said that "Grobe and Associates are preparing the returns." Dkt. 96, at 20. The letter did not include contact information for that firm or a power-of-attorney notification.

On August 13, 2014, between 8 a.m. and 4 p.m., Rudser made a field visit to Wrhel's residence in Madison to inquire about the unfiled tax returns. When Rudser knocked on the door, there was no answer. Rudser left copies of IRS Publication 1, which explains a taxpayer's rights, and IRS Publication 594, which explains the IRS's collection process, in a sealed envelope addressed to Wrhel at the door. Rudser also left his business card at Wrhel's door. Wrhel says that Rudser "was observed sitting on Wrhel's enclosed front porch for an extended period of time," Dkt. 95, at 20, but Wrhel does not cite to any admissible evidence for this proposed finding, other than the packet of materials that Rudser left at the house.

That same day but after the visit, Vallon and Wrhel met. Vallon told Wrhel that Vallon had not notified the IRS that he was preparing Wrhel's returns. Vallon, with Wrhel present, called Rudser. Following the conversation, Rudser agreed to give Wrhel 30 days to file the delinquent returns before referring the matter to an IRS "examination group" to determine Wrhel's tax liabilities. Wrhel did not file tax returns within that time period. Consequently, on September 15, 2014, Rudser closed his case and referred the delinquent-returns matter to the IRS Examination Division. In October 2014, the IRS received Wrhel's 2011, 2012, and 2013 tax returns.

ANALYSIS

Defendant has filed a motion for summary judgment.[2] To succeed on its motion, defendant must show that there is no genuine issue of material fact and that it is entitled to

---

[2] Defendant filed a motion to extend the dispositive-motions and expert-disclosure deadlines

judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Wrhel brings claims under two theories: he seeks (1) a refund of money he paid to the IRS for overdue 2010 taxes, along with interest and penalties, under 26 U.S.C. § 7422; and (2) damages under 26 U.S.C. § 7433 for IRS agent misconduct concerning his 2010 to 2013 taxes.

## A. Refund under 26 U.S.C. § 7422

Wrhel alleged that he received a check for $335.59 following the Tax Court's determination that the IRS never properly sent him a notice of deficiency. In denying the government's motion to dismiss this claim, I concluded that Wrhel still had a potential claim because it appeared that the refund check he received did not fully cover the taxes, interest, and penalties that he was forced to pay. *See* Dkt. 32, at 5.

But the undisputed facts here show that the IRS does not owe Wrhel a refund. There were two payments made towards Wrhel's 2010 tax deficiency, totaling $487.76: a levy of

---

pending resolution of the parties' dispute over medical records. Dkt. 76. But defendant followed with a motion for summary judgment, and as I discuss in this opinion, the case can be resolved without a detailed analysis of Wrhel's medical records. I will deny defendant's motion to extend deadlines as moot.

$94.41 from Wrhel's state income tax refund, and Wrhel's own payment of $393.35. The IRS actually reimbursed him more than that amount. It sent him two refund checks totaling $502.05: a January 5, 2015 refund check for $166.46, and a May 23, 2016 refund check for $335.59.

Wrhel never cashed the second check, and he maintains that he will not accept the check until the lawsuit is resolved. He appears to be concerned that accepting the check might moot his case, but I assure him that this is not so: if he had been refunded too little, he would still be able to maintain a § 7422 claim, and the exact amount refunded does not affect his § 7433 claim.

Nonetheless, the undisputed facts show that the government has done all it was required to do, given the Tax Court's ruling that the 2010 tax deficiency was not properly noticed. So I will grant summary judgment to the United States on Wrhel's § 7422 claim. In his responses to defendant's proposed findings of fact, he says that he "is entitled to a replacement check . . . pending satisfactory resolution of this suit." Dkt. 94, at 3. At one point, Wrhel sent the check to the court, and the clerk of court returned it to him. *See* Dkt. 21 and Dkt. 22. Because the check says that it is void one year after issuance, Wrhel will not be able to cash it.

Wrhel is not entitled to a replacement check as a remedy in this lawsuit, because I am granting summary judgment on this claim to defendant. But defendant states that Wrhel can write to the IRS for a new check, using Form 3911 ("Taxpayer Statement Regarding Refund"). I encourage Wrhel to do so.

## B. Damages for unauthorized collection actions under 26 U.S.C. § 7433

Wrhel brings claims under 26 U.S.C. § 7433, under which taxpayers may sue the government for damages if "in connection with any collection of Federal tax with respect to a

taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision" of the Internal Revenue Code or IRS regulations promulgated under the code. 26 U.S.C. § 7433(a).

Wrhel contends that the IRS's actions regarding both his 2010 tax-deficiency matter and his 2011–2013 late-tax-return matter violated tax-collection provisions. More specifically, I take him to be alleging that IRS personnel harassed him and either intentionally or negligently allowed tax-deficiency and collection notices to be sent to the incorrect address.

### 1. Harassment

Under 26 U.S.C. § 6304 ("Fair tax collection practices"), IRS officials are forbidden from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax." Wrhel contends that Rudser's actions in contacting him about his missing 2011–2013 returns were harassment.

The government first argues that Wrhel cannot maintain a § 7433 claim about Rudser's actions because § 7433 covers "collection" activities, not "assessment" activities. But they don't develop this argument by citing authority demonstrating how Rudser's actions concerned only assessment activity. And the packet that Rudser placed at Wrhel's door was titled "The IRS Collection Process." Dkt. 96-1, at 1. So I will not grant summary judgment to defendant on this ground.

Defendant alternatively contends that nothing Rudser did was harassment within the meaning of the IRS rules. In my order denying defendant's motion to dismiss, I summarized Wrhel's allegations about his unfiled returns as follows:

> Starting in July 2014, IRS agents began contacting Wrhel about unfiled returns. Wrhel responded to the letter by writing back, stating that he had hired an accounting firm to work on the problem. In . . . August, . . . Wrhel's housekeeper notified him

that a man was "on [his] property." The man left "IRS literature" and the business card for an IRS agent at the door. On the card, a note was written stating that Wrhel "must call" him back by 4 p.m. the next day. Wrhel met with his accountant, called the agent, and arranged to have his returns filed by mid-September 2014. Wrhel states that that was earlier than he had originally believed because he had earlier submitted a request for extension, which the IRS now claimed it had not received.

Dkt. 32, at 4.

At summary judgment, it is Wrhel's burden to produce facts showing exactly what defendant did that constitutes harassment. The facts produced by the parties here do not suggest that Rudser harassed Wrhel or that Rudser violated any other IRS rules.

At the outset, I note that the event that kicked off Rudser's interactions with Wrhel was Wrhel's failure to file tax returns from three consecutive years. IRS rules authorize agents to contact delinquent filers, and Wrhel could not have been surprised that the IRS contacted him about the returns. Section 6304 gives examples of inappropriate conduct: threatening or using violence, obscene language, repeated phone calls meant to annoy, or failing to disclose the caller's identity. Section 6304(b)(1)–(4). None of these things happened here. Although this list is not meant to be exhaustive, it does provide the court with a sense of what types of actions would count as harassment. The facts here show that Rudser acted within the IRS rules and there is no evidence that he acted any other way than politely toward Wrhel.

Wrhel contends that Rudser's home visit was harassment because Wrhel had already written to the IRS that he was being represented by an accountant. But Wrhel made only an offhand comment in a letter that "Grobe and Associates are preparing the returns." Dkt. 96, at 20. As defendant points out, Wrhel did not fill out the IRS "power of attorney" form that would have allowed the IRS to speak with a representative instead of Wrhel himself. And Wrhel conceded that his accountant, Vallon, failed to contact the IRS about Vallon's

13

engagement. Without a formal grant of representative authority to Vallon, Wrhel himself was the correct person for Rudser to contact.

Wrhel also considers the home visit itself to be "about as illegal as it gets," Dkt. 93, at 7, but IRS regulations allow agents to visit a taxpayer's home within normal business hours, and even several hours after, which it is undisputed Rudser did. *See* § 6304(a)(3) ("In the absence of knowledge of circumstances to the contrary, the Secretary shall assume that the convenient time for communicating with a taxpayer is after 8 a.m. and before 9 p.m., local time at the taxpayer's location."). Wrhel seems to consider Rudser's contact to be harassment in part because he sees it as part of a scheme of intimidation involving an incident in which someone also took photographs of his home: he suggests, without any evidentiary support, that Rudser or someone else "[took] pictures" of his home. Dkt. 93, at 6. But I previously concluded that Wrhel did not properly plead that an IRS official was responsible for this behavior. *See* Dkt. 32, at 7 ("it is clear . . . that Wrhel has no idea who this person is or why he was taking pictures of his home."). So the alleged photographing incident is no longer part of the case, and it cannot be considered as part of Rudser's actions for purposes of the § 7433 claim.

Wrhel also alleged that IRS personnel lost his request for extension to file his returns. But now at summary judgment he does not provide any proposed findings of fact supporting that allegation, so I will not consider it. The record here shows that Rudser sent Wrhel two letters, left materials at his door, and then spoke with Vallon over the phone to work out a deadline for filing the returns. There is no reason to think that this was anything other than ordinary tax investigation work by Rudser. No reasonable factfinder[3] would conclude that

---

[3] There is no right to a jury trial for § 7433 claims. *See* 28 U.S.C. § 2402 (plaintiff has a right to a jury only in a refund suit); *Sylvester v. United States*, 978 F. Supp. 1186, 1192 (E.D. Wis. 1997) (striking jury demand for § 7433 claim). The government has filed a motion to strike

Rudser's conduct was harassment under § 6304. So I will grant summary judgment to defendant on this aspect of Wrhel's § 7433 claim.

### 2. Incorrect address

Wrhel also contends that the IRS either negligently or intentionally violated the tax code and regulatory provisions about sending tax-collection notices to the taxpayer's last-known address when it repeatedly sent notices to Wrhel's old Iowa address instead of the Madison, Wisconsin address listed on his 2010 tax return. *See* 26 U.S.C. § 6331(d)(2)(C) (levies may not be made until 30 days after notice sent to last-known address); 26 C.F.R. § 301.6212-1(b)(1) (income-tax deficiency is sufficient if sent to last-known address); 26 C.F.R. § 301.6212-2(a) ("Definition of last known address").

The government concedes for purposes of summary judgment that IRS employees negligently violated its rules by sending the notices to the wrong address. So it is undisputed that Wrhel has proven the government's liability on this aspect of his § 7433 claim.

### 3. Damages

That leaves the matter of damages on the § 7433 claim regarding defendant sending notices about Wrhel's 2010 taxes to the wrong address. Under § 7433, taxpayers may recover the "costs of the action" and "actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the [IRS] officer or employee." Section 7433(b)(1). An IRS regulation further defines "Actual, direct economic damages" as:

> actual pecuniary damages sustained by the taxpayer as the proximate result of the reckless or intentional, or negligent, actions of an officer or an employee of the Internal Revenue

---

Wrhel's jury request for his § 7433 claim, Dkt. 117, which I will grant.

> Service. Injuries such as inconvenience, emotional distress and
> loss of reputation are compensable only to the extent that they
> result in actual pecuniary damages.

26 C.F.R. § 301.7433-1(b). "Pecuniary" means "[o]f, relating to, or consisting of money; monetary." Black's Law Dictionary (10th ed. 2014).

In a supplement to his complaint, Wrhel stated the following about his damages:

> I have suffered unnecessary anxiety, unnecessary unrest,
> unnecessary depression which caused me an inability to
> effectively operate my pepperidge farm business. This was
> unnecessary and not fair to pepperidge farm. . . . It further has
> wrecked all trust, faith, and belief in the United States Internal
> Revenue Service.
>
> I have no desire to continue living in this country as a direct
> reckless disregard by the IRS and the subsequent seizure that took
> place.

Dkt. 13, at 6.

In denying defendant's motion to dismiss Wrhel's § 7433 claim, I stated that "Wrhel's allegation that his business suffered because of the turmoil caused by the IRS's actions is sufficient, at least at the pleading stage, to support his claim for damages." Dkt. 32, at 7. Now the government contends that Wrhel has failed to show that any of his alleged damages qualify as "direct economic damages."

Wrhel does not directly make the case for damages in his summary judgment opposition brief. But in his proposed findings of fact, he states the following:

> Wrhel suffer damages including: anxiety, undue stress, mental
> anguish, and depression, which requires medical treatment.
> Wrhel's symptoms further required counseling sessions with a
> U.W. Psychologist. These symptoms caused negative implications
> to Wrhel. This prevented Wrhel from executing my
> responsibilities as the owner/operator of a Pepperidge Farm
> Distributorship. This business was voluntarily placed up for sale
> to protect the stores assigned to this distributorship from being
> harmed due to my complications resulting in the illegal actions

that precipitated an illegal seizure on Wrhel on November 12.
2014.

Dkt. 95, at 22. In his opposition brief, he adds that the government "took [his] Faith, Trust, and Belief, that we as Americans will, (1) never be seized upon without due service, (2) will not be unreasonably searched." Dkt. 93, at 8. In an interrogatory response, he states that he seeks $34,200,000 in damages for "[i]rreparable emotional [and] mental anguish . . . sale of [his] business due to inability to maintain mental [and] physical expectations." Dkt. 90-1, at 5. He also sent defendant a bill for about $3,400 he owes to Toyota Financial Services regarding the repossession of a car in 2017. Dkt. 90-7.

Wrhel does not provide evidence coming anywhere close to justifying his request for $34 million in damages. Nor could this court award him anywhere close to that amount: Section 7433(b) caps damages at $100,000 for negligent violations and $1 million for reckless or intentional violations. The IRS regulations also specifically forbid recovery for emotional distress unless it results in pecuniary damages. So Wrhel cannot recover any amount for the purely emotional distress he says he has suffered.

Wrhel also says that he was forced to sell his business, that his car was repossessed, and I take him to be saying that he has accumulated medical bills for treatment of anxiety and depression that he has suffered, although he does not enumerate those costs in his summary judgment briefing.

Defendant contends that Wrhel fails to provide evidence that his emotional distress from his tax problems actually caused these injuries, and states that this case should be guided by *Music v. United States*, 17 F. Supp. 3d 1327 (N.D. Ga. 2014). That is a § 7433 case in which the government sent a notice of levy to the incorrect address, and plaintiff stated that she was forced to quit her job because her levied paycheck no longer made it worth her commuting. *Id.*

at 1331–32. The court concluded in part that the plaintiff's damages were not "foreseeable" because "[p]laintiff's quitting her job is not a natural and probable consequence of an incorrectly addressed letter." *Id.* at 1336. Defendant says that Wrhel has failed to show that any of Wrhel's alleged losses stated above were proximately caused by the IRS's actions.

Defendant is correct that Wrhel in his opposition failed to connect the dots between the IRS's actions and his alleged emotional harm. And it seems unlikely that he would be able to explain how repossession of his car years after IRS's alleged transgressions could be proximately caused by the IRS. But Wrhel appears to have held off on more fully briefing the issue because the parties continued to dispute his authorization for release of medical records that he says would prove his claims. Following summary judgment briefing, he submitted compact discs containing medical records that provide some information about treatment he received for depression and anxiety. *See* Dkt. 102; Dkt. 106; Dkt. 107. And he has filed motions asking to file a sur-reply concerning his medical records, Dkt. 100, and for the court to hold oral argument on the summary judgment motion, Dkt. 105.

Given Wrhel's pro se status and the outstanding dispute over authorization of medical records, I would ordinarily give him another chance to explain the connection between his asserted emotional distress and his pecuniary damages. But there is no need for further briefing here, because even assuming that Wrhel can show that he has suffered emotional distress, he cannot maintain claims for emotional harm stemming from the relatively minor transgressions supporting his § 7433 claim.

It is important to make clear that I cannot consider much of what Wrhel believes was the proximate cause of his damages. Counter to Wrhel's theory, this is not a case about IRS officials stalking him. He characterizes Rudser's various acts as harassment, but I concluded

above that they do not support a claim under § 7433. Wrhel also states that the initial wrongly sent December 2011 notice was issued only days after financial-transaction data regarding his deceased father's bank accounts was sent to the IRS. I take him to be suggesting that the incorrectly addressed notices were intentionally botched because the IRS had become aware of this information. But he does not explain why the IRS would intentionally send notices to the wrong address; his mere speculation that this was intentional is not evidence. While his belief in a conspiracy against him seems to be part of the reason he is upset about the IRS's actions, it cannot support a § 7433 claim.

So what the § 7433 claim boils down to is Wrhel's reaction to the notices sent to the wrong address, the levy of $94 from his state income tax refund, and the IRS's bill for about $400, all for taxes on gambling winnings that Wrhel knew that he had avoided and that he would have had to pay if not for the IRS's mistake. No one would be happy to learn that the IRS had been trying to recover taxes and had violated its own mailing rules in doing so, but again, this was not a completely fabricated bill: Wrhel indeed failed to disclose his gambling winnings. Put another way, I take Wrhel to be contending that he should be able to recover at the very least thousands of dollars in damages because the IRS sent mail to the wrong address and then recovered about $500 from him before reimbursing him.

Wrhel has not actually produced any evidence suggesting that the IRS's actions were intended to inflict emotional harm upon him, but under traditional standards for either negligent or intentional infliction of emotional harm, some threshold of the reasonability of the alleged serious emotional harm suffered is required. *See, e.g.,* Restatement (Third) of Torts: Phys. and Emot. Harm § 46 ("Intentional (or Reckless) Infliction of Emotional Harm") cmt. j (2012) ("[T]he law intervenes only when the plaintiff's emotional harm is severe *and when a*

*person of ordinary sensitivities in the same circumstances would suffer severe harm*. There is no liability for emotional harm suffered only because of the unusual vulnerability of a victim, unless the actor knew of that special vulnerability." (emphasis added)); and § 47 ("Negligent Conduct Directly Inflicting Emotional Harm on Another") cmt. *l* ("[T]he actor's conduct must be such that would cause a reasonable person to suffer serious emotional harm. . . . Objectively, an unusually susceptible person may not recover if an ordinary person would not have suffered serious emotional harm.").

There is no need for a trial here because no reasonable factfinder would conclude that the minor IRS transgressions remaining in the § 7433 analysis could cause a reasonable person to suffer serious emotional distress. Wrhel's medical records provide some support for his position that he has suffered substantial mental distress from the interactions with the IRS. *See, e.g.*, Dkt. 106, at 250 (September 14, 2016 psychiatrist's note) ("[Wrhel] does perseverate somewhat on the belief that the Federal Government has stolen money from him. . . . I am somewhat uncertain about the nature of this perseveration on the government having taken money from him. It does certainly have a certain delusional quality to it, but at the same time, Mr. Wrhel denies any other psychotic symptoms, and notably as well his concerns are somewhat rooted in truth."). And his many filings in this court underscore his anger at the IRS. He has repeatedly said that he has lost faith in the government and that he intends to move to another country. But the substantial harm that he says he suffered is simply not the type of harm that could reasonably be expected to be caused by the IRS's violations in this case. So I conclude as a matter of law that Wrhel is not entitled to any damages flowing from emotional distress.

The government suggests that the most Wrhel should be able to recover here is his $400 filing fee, because the *Music* court awarded the plaintiff her filing fee as a "cost of the action" under § 7433. *See* 17 F. Supp. 3d at 1338. Because the text of § 7433 explicitly states that after the plaintiff may recover the costs of the action if liability is found, I will direct the clerk of court to enter judgment in Wrhel's favor for $400.

From Wrhel's filings, I do not doubt that he is angry at the government. He contends that the IRS should be forced to investigate exactly what went wrong with the address system here. He seems to think that IRS officials intentionally mis-sent the notices, perhaps as part of a conspiracy connected to his father's estate. But there is no evidence to support this theory, and the government maintains that its system is automated and it does not know why the system failed in this case. Hopefully in addition to his admittedly meager $400 judgment, Wrhel can take away from this case the knowledge that the IRS is as capable of making mistakes as taxpayers are.

ORDER

IT IS ORDERED that:

1. Plaintiff Eric Thomas Wrhel's motion to "expand" his complaint, Dkt. 54, is GRANTED.

2. Plaintiff's motion to add *Bivens* claims, Dkt. 111, is DENIED. Defendant United States of America's motion to strike the proposed new claims, Dkt. 115, is GRANTED.

3. Plaintiff's motion to sanction Attorney Moran, Dkt. 55, is DENIED.

4. Plaintiff's motion for preliminary injunctive relief, Dkt. 85, is DENIED.

5. Plaintiff's motion for protective order, Dkt. 42, is GRANTED.

6. Plaintiff's motions for issuance of subpoenas, Dkt 50 and Dkt. 53, are DENIED.

7. Defendant's motion for protective order, Dkt. 59, is DENIED as moot.

8. Defendant's motions regarding production of plaintiff's medical records, Dkt. 60 and Dkt. 119, are DENIED as moot.

9. Plaintiff's motion to compel discovery, Dkt. 71, is DENIED.

10. Defendant's motion to prohibit plaintiff from issuing further discovery requests, Dkt. 61, is DENIED as moot.

11. Defendant's motion to extend the dispositive motions and expert-disclosure deadlines, Dkt. 76, is DENIED as moot.

12. Plaintiff's motions to file a sur-reply opposing defendant's motion for summary judgment, Dkt. 100, and for oral argument, Dkt. 105, are DENIED.

13. Defendant's motion to strike plaintiff's jury demand for his § 7433 claim, Dkt. 117, is GRANTED.

14. Defendant's motion for summary judgment, Dkt. 86, is GRANTED IN PART and DENIED IN PART as discussed in the opinion above.

15. The clerk of court is directed to enter judgment in plaintiff's favor for $400.

Entered December 20, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge